#4

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)    15BG /DAD    No Fee/No IFP

# UNITED STATES DISTRICT COURT

for the

Western District of Pennsylvania

Pittsburgh Division

|  |  |
|---|---|
| JOHN WILLIAMS, | Case No. 3:23-cv-244 |
| _Plaintiff(s)_ | _(to be filled in by the Clerk's Office)_ |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | related 3:20-cv-61 |
| -v- |  |
|  | Jury Trial Demanded |
| (SEE ATTACHED) | RECEIVED |
| _Defendant(s)_ | OCT 10 2023 |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.) | CLERK, U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name                                   John Williams

All other names by which
you have been known:

ID Number                       DOC #NW7468

Current Institution          SCI Phoenix

Address                           1200 Mokychic Drive

                                        Collegeville        PA      19426
                                        *City*              *State*     *Zip Code*

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1
        Name                        Correctional Lieutenant English
        Job or Title *(if known)*   Security Official
        Shield Number
        Employer                    SCI Houtzdale
        Address                     P.O. Box 1000, 209 Institution Drive
                                    Houtzdale        PA      16698-1000
                                    *City*           *State*    *Zip Code*
                                    [X] Individual capacity    [X] Official capacity

Defendant No. 2
        Name                        Correctional Captain Mooney
        Job or Title *(if known)*   Security Official
        Shield Number
        Employer                    SCI Houtzdale
        Address                     P.O. Box 1000, 209 Institution Drive
                                    Houtzdale        PA      16698-1000
                                    *City*           *State*    *Zip Code*
                                    [X] Individual capacity    [X] Official capacity

Defendant No. 3

  Name       Correctional Officer Sinclair

  Job or Title *(if known)*    Security Official

  Shield Number

  Employer      SCI Houtzdale

  Address      P.O. Box 1000, 209 Institution Drive

       Houtzdale      PA     16698-1000
          *City*        *State*     *Zip Code*

  [X] Individual capacity    [X] Official capacity

Defendant No. 4

  Name       Correctional Officer Patrick

  Job or Title *(if known)*    Security Official

  Shield Number

  Employer      SCI Houtzdale

  Address      P.O. Box 1000, 209 Institution Drive

       Houtzdale      PA     16698-1000
          *City*        *State*     *Zip Code*

  [X] Individual capacity    [X] Official capacity

**II. Basis for Jurisdiction**
(additional Defendants on next page)

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

  [ ] Federal officials (a *Bivens* claim)

  [X] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

  (See Statement of Facts, appended hereto)

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

ADDITIONAL DEFENDANTS

Correctional Lieutenant Oliver
Correctional Officer John Doe #1
Correctional Officer John Doe #2
Correctional Officer John Doe #3
Correctional Officer John Doe #4
Correctional Officer Yeager
Correctional Officer Gallaher
Correctional Officer Myers
SCI Houtzdale Security Office
SCI Houtzdale
P.O. Box 1000
209 Institutional Drive
Houtzdale, PA 16698-1000

Freddy Nunez
Disciplinary Hearing Examiner
Pennsylvania Department of Corrections
Central Office
1920 Technology Parkway
Mechanicsburg, PA 17050

*These Defendants are sued in their individual and official
 capacities

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

```
The Defendants are state correctional officials who acted
during the course of performing their official duties.
```

III.  **Prisoner Status**

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☒  Convicted and sentenced state prisoner

☐  Convicted and sentenced federal prisoner

☐  Other *(explain)* _____

IV.  **Statement of Claim**

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

```
(See Statement of Facts, appended hereto)
```

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

`(See Statement of Facts, appended hereto)`

D.    What are the facts underlying your claim(s)? *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

`(See Statement of Facts, appended hereto)`

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

`(See Injuries, appended hereto at p. 5-13)`

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

`(See Relief, appended hereto at p. 5-13)`

## STATEMENT OF FACTS

1.  From October 17, 2019 until March 8, 2023, Plaintiff John Will-
    iams (hereinafter "Plaintiff") was confined in the Pennsylvania
    Department of Corrections (hereinafter "DOC") at the State Corr-
    ectional Institution Houtzdale (hereinafter "SCI Houtzdale").
    During the period of time in which the events described herein
    occurred, Plaintiff was housed on the SCI Houtzdale Veterans
    Service Unit (hereinafter "VSU"), which was located on G Block
    and was a specially-created, federally-funded housing unit for
    U.S. military veterans that afforded confined veterans substan-
    tially greater personal freedoms, institutional privileges,
    access to emotionally- and psychologically-supportive therap-
    eutic programming, and a far more relaxed environment in which
    to live than the typical general population cellblocks at SCI
    Houtzdale.

2.  Between June 2021 and December 2022, the following SCI Houtzdale
    prisoners requested Plaintiff's assistance in directly or coll-
    aterally attacking their respective state court judgements of
    conviction and sentence:

    -Landon Thomas, DOC #QD2339
    -Emmanuel Howard, DOC #MS2620
    -Nafees Jordan, DOC #NA7570
    -John Simpson, DOC #MQ9395
    -James Huber, DOC #QA8459
    -George Fletcher, DOC #NZ4064
    -Jose Marmalejos, DOC #QA4385
    -Keith Davis, DOC #NF9296
    -Alex Grant, DOC #GD3828
    -Wiley Gambrel, DOC #NM5383
    -Orin Wadlington, DOC #QL4388
    -Aaron Mills, DOC #NJ0705
    -Dawayne Maxwell, DOC #HN5744
    -Anthony Gudino, DOC #QA3799

-Antwan Charles, DOC #(unknown)
-Quameer Smith, DOC #(unknown)

3.  During the period of time indicated in ¶ 2, <u>supra</u>, Plaintiff
    assisted the prisoners also identified therein by listening to
    the prisoners' accounts of their respective cases and why they
    believed they may have been entitled to relief, taking notes
    of all relevant information that may have formed a basis for
    seeking relief in the prisoners' cases, conducting legal re-
    search on behalf of the prisoners into the availability of
    relief in their respective cases, and preparing the petitions,
    motions, briefs, documentary exhibits or appendices, and other
    legal documents necessary for the prisoners to file with the
    courts in order to initiate and litigate their respective dir-
    ect or collateral attacks on their judgements of conviction
    and sentence. (See, e.g., <u>Howard v. Smith</u>, Nos. 2:20-CV-1766,
    2:22-CV-2665 (E.D. Pa.); <u>Jordan v. Smith</u>, No. 2:22-CV-0712 (E.D.
    Pa.); <u>Simpson v. W.L. Gore & Associates</u>, No. 3:21-CV-0192 (M.D.
    Pa.); <u>Commonwealth v. Huber</u>, No. CP-06-CR-2794-2017 (Berks Co.);
    <u>Commonwealth v. Huber</u>, No. 611 MDA 2022 (Pa. Super.); <u>Huber v.
    Klinefelter</u>, No. 5:22-CV-3931 (E.D. Pa.); <u>Commonwealth v.
    Fletcher</u>, No. CP-02-CR-3051-2019 (Allegheny Co.); <u>Commonwealth
    v. Fletcher</u>, No. 1392 WDA 2022 (Pa. Super.); <u>Commonwealth v.
    Marmalejos</u>, No. CP-51-CR-5469/5470/5964-2018 (Phila. Co.);
    <u>Marmalejos v. Court of Common Pleas</u>, No. 2:22-CV-3608 (E.D.
    Pa.); <u>Marmalejos v. Smith</u>, No. 2:22-CV-1614 (E.D. Pa.); <u>Davis
    v. Smith</u>, Nos. 3:21-CV-0135, 3:22-CV-0152 (W.D. Pa.); <u>Gambrel
    v. Smith</u>, No. 2:21-CV-0888 (W.D. Pa.); <u>Commonwealth v. Grant</u>,

(5-2)

No. CP-51-CR-504921-2004 (Phila. Co.); Commonwealth v. Wadling-
ton, Nos. CP-09-CR-2665-2020, CP-09-CR-2948-2018 (Bucks Co.);
Commonwealth v. Maxwell, No. CP-51-CR-10398-2016 (Phila. Co.);
Maxwell v. Klinefelter, No. Unknown (E.D. Pa.); Commonwealth
v. Gudino, No. CP-45-CR-1521-2016 (Monroe Co.); Commonwealth
v. Mills, No. Unknown (Chester Co.); Commonealth v. Charles,
No. Unknown (Phila. Co.)).

4. The prisoners identified in ¶ 2, supra, were either housed with
Plaintiff on the VSU, moved from the VSU to other cellblocks
after having requested Plaintiff's assistance, or requested
Plaintiff's assistance from other SCI Houtzdale cellblocks dur-
ing the period of time previously indicated herein. The prisoners
requested Plaintiff's assistance in their respective cases be-
cause (1) each of them suffered from educational, intellectual,
cognitive, mental, physical, and/or language disabilities which
prevented them from comprehending the use and language of the
legal resources in the prison law library and preparing the
legal documents necessary to initiate and continue a direct or
collateral attack on their respective judgements of conviction;
(2) SCI Houtzdale did not provide the prisoners with any form
of access to persons trained in the law or disability assist-
ance to attack their judgements of conviction; (3) Plaintiff
has a college-level education, is bilingual in English and
Spanish, and has developed a certain proficiency in conducting
legal research, analyzing and applying the law to the facts of
a case, and preparing the legal documents necessary to the
initiation and litigation of a direct or collateral attack on

(5-3)

a Pennsylvania state court judgement of conviction; (4) SCI
Houtzdale permitted each prisoner only a single hour of law
library access during the time period indicated in ¶ 2, supra;
and (5) Plaintiff owned a typewriter, had accumulated a size-
able personal library of statutes, procedural rules, and case
law, and was therefore not completely dependent upon physical
access to the prison law library to conduct the legal research
and prepare the legal documents necessary to the adequate and
timely litigation of a direct or collateral attack on a state
court judgement of conviction.

5.  During the period of time indicated in ¶ 2, supra, Plaintiff
was frequently required to take temporary possession of the
case-related documentation of the prisoners also identified
therein because (1) the prisoners were either subject to filing
deadlines or statutes of limitations for initiating attacks on
their respective judgements of conviction, or their cases were
actively proceeding and immediate responses to the appellees'
or respondents' pleadings or the state courts' orders were
required or expected to be due soon; and (2) SCI Houtzdale did
not provide any way for Plaintiff and the prisoners to meet in
the prison law library or some other designated location where
they could have access to legal resources and collaborate on
the prisoners' cases.

6.  During the period of time indicated in ¶ 2, supra, Plaintiff
was subjected to a number of regularly-scheduled or random
security searches of his cell and personal property during

(5-4)

which correctional officers became aware that Plaintiff was in possession of the case-related documentation of the prisoners identified herein. Yet, at no time during or following these searches did the correctional officers confiscate these case-related documents, issue Plaintiff an inmate misconduct report for possessing them, or otherwise admonish or warn Plaintiff that he was not permitted by DOC rules & regulations to possess the case-related documentation of other prisoners. Additionally, the correctional officers who were assigned to and routinely worked on the VSU were also aware that Plaintiff was providing legal assistance to the prisoners identified herein and in possession of their case-related documentation during the time period in question, yet these VSU correctional officers never confiscated these case-related documents, issued Plaintiff an inmate misconduct report for possessing them, or otherwise admonished or warned Plaintiff that he was not permitted by DOC rules & regulations to possess the case-related documentation of other prisoners. In fact, on multiple occasions, the VSU correctional officers permitted Emmanuel Howard and Alex Grant to come to the VSU from their neighboring cellblock to deliver additional case-related documentation to Plaintiff and discuss the progress of their cases with him. Video surveillance footage of the interior of and the exterior walkway to the VSU during the time period in question will corroborate the afore allegations.

7. During the period of time that Plaintiff was assisting Emmanuel

(5-5)

Howard in collaterally attacking his state court judgement of conviction, Howard related to Plaintiff that he was being interviewed regularly by SCI Houtzdale internal security officials as part of an ongoing internal investigation into the introduction and distribution of illicit drugs into SCI Houtzdale by former gang member associates of Howard's, and that, during these interviews, Correctional Lieutenant English (hereinafter "Lt. English") advised Howard that security officials were aware that Howard's association and interactions with Plaintiff were solely for the purpose of obtaining legal assistance in appealing his state court judgement of conviction and security officials, Lt. English in particular, were not interested in these activities. Video surveillance footage of Howard's cellblock (K Block) and adjoining recreation yard, the Education Building where Howard was employed, the SCI Houtzdale internal security offices, and the exterior walkways between these locations during the time period in question will corroborate Howard's numerous interactions with security officials.

8. During the weekend of December 9-11, 2022, Plaintiff assisted Howard in the preparation of an institutional grievance that complained of official harassment, intimidation, and misconduct by Lt. English during the course of the internal investigation described in ¶ 7, supra. This institutional grievance was filed by Howard on the evening of December 11th.

9. On December 13, 2022, two internal security officials, Correctional Officers Sinclair and Patrick (hereinafter "C.O. Sinc-

lair" and "C.O. Patrick"), conducted a search of Plaintiff's
cell and personal property, specifically searching for and
confiscating the case-related documentation of the prisoners
indentified in ¶ 2, supra. No other items of typical prisoner
contraband that Plaintiff had in his possession at the time
were confiscated by these officials. During the search, James
Huber, George Fletcher, Wiley Gambrel, and Orin Wadlington
came to Plaintiff's cell and advised the two officials that
they had provided their case-related documentation to Plain-
tiff so that he could assist them in the preparation of legal
documents that were necessary to the litigation of their resp-
ective criminal appeals, they were subject to impending filing
deadlines in their cases, and each of these prisoners objected
to the confiscation of their case-related documentation and
obstruction of their right of access to legal assistance and
the courts. The two officials responded that they were only
following orders to confiscate all paperwork in Plaintiff's
possession pertaining to the cases of other prisoners and
took this case-related documentation to the SCI Houtzdale
internal security office. In total, the two officials confis-
cated the case-related documentation of each of the prisoners
identified in ¶ 2, supra. Each of these prisoners later rel-
ated to Plaintiff that, when they were called to the security
offices to retrieve their case-related documentation, C.O.
Sinclair and C.O. Patrick advised each of them that Plaintiff
was not permitted to assist them in their criminal appeals

or have their case-related documentation in his possession for any length of time. Video surveillance footage of the interior and exterior walkways to and from the VSU and the SCI Houtzdale security offices will corroborate the aforegoing allegations.

10. On December 30, 2022, approximately five internal security officials, including Correctional Lieutenant Oliver and Correctional Officers John Does #1 thru #4, conducted another search of Plaintiff's cell and personal property. However, because Plaintiff did not have any case-related documentation pertaining to the cases of other prisoners in his possession at that time, these officials did not find or confiscate any case-related documentation from Plaintiff on this date. Video surveillance footage of the interior of and exterior walkways to and from the VSU on the date in question will corroborate the aforegoing allegations.

11. On January 3, 2023, two internal security officials, Correctional Officers Yeager and Gallaher (hereinafter "C.O. Yeager" and "C.O. Gallaher"), conducted a third search of Plaintiff's cell and personal property, again specifically searching for and confiscating the case-related documentation of the prisoners identified in ¶ 2, supra, which had been returned to Plaintiff by these prisoners after the December 13th search so that he could resume the preparation of the documents that were or soon would be due in each of their cases. No other items of typical prisoner contraband that Plaintiff had in his possession at the time were confiscated by these officials. When Plaintiff

protested to the two officials that these searches were merely a means of harassing and retaliating against him for engaging in constitutionally-protected activities in the prison setting, the two officials advised Plaintiff that they were only follow-ing orders by Correctional Captain Mooney to search for and confiscate any case-related documentation pertaining to the cases of other prisoners in Plaintiff's possession and issue him an inmate misconduct report for possession of contraband. Video surveillance footage of the interior of and exterior walkways to and from the VSU on the date in question will corroborate the aforegoing allegations.

12. Following the December 13th search of Plaintiff's cell and personal property and confiscation of the case-related docu-mentation of the prisoners identified in ¶ 2, supra, James Huber, George Fletcher, Wiley Gambrel, Jose Marmalejos, Keith Davis, Dawayne Maxwell, and Plaintiff each filed institutional grievances complaining of the retaliatory obstruction of their right of access to the courts. SCI Houtzdale internal security officials, including but not limited to Correctional Lieuten-ant Pancoat, later called these prisoners to the security offices and attempted to intimidate the prisoners into with-drawing their grievances with threats of harassment and retal-iation. As a result thereof, only Huber, Fletcher, Davis, and Plaintiff refused to withdraw their grievances. (See SCI Houtz-dale Prisoner Grievance Documentation, appended hereto at EXHIBIT A). Video surveillance footage of the SCI Houtzdale

(5-9)

security offices during the time period in question will corr-
oborate the aforegoing allegations.

13. On January 9, 2023, Plaintiff was served with an inmate mis-
conduct report written by C.O. Yeager which charged Plaintiff
with a Code 36: Possession of Contraband for his possession of
the case-related documentation of the prisoners identified in
¶ 2, supra, on January 3, 2023. In accordance with DOC inmate
misconduct hearing procedures, Plaintiff provided a written
version of his account of the events underlying the inmate
misconduct report and requested witnesses for his impending
misconduct hearing by completing the DC-141 Part 2(A) form
provided to him with his inmate misconduct report and deliver-
ing these completed forms to the VSU Block Officer on duty
that same date.

14. Plaintiff's misconduct hearing was conducted on January 11,
2023 by Disciplinary Hearing Examiner Freddy Nunez (herein-
after "DHE Nunez"), who was already a defendant to another
pending civil rights action involving DHE Nunez's adjudication
of an inmate misconduct report issued against Plaintiff by
a correctional officer obstructing his right of access to the
prison law library. (See Williams v. Wolf, No. 3:20-CV-0061
(W.D. Pa.)). At Plaintiff's January 11th misconduct hearing,
DHE Nunez allowed the security official who escorted Plaintiff
to and supervised the misconduct hearing conducted via two-
way audiovisual communications technology, Correctional
Officer Myers (hereinafter "C.O. Myers"), to repeatedly and

(5-10)

contemptuously refer to Plaintiff as "the jailhouse lawyer",
and engage in a continuous diatribe against Plaintiff, harang-
uing and ranting at Plaintiff that he had no rights in prison
and no right to assist other prisoners with their criminal
appeals or possess their case-related documentation, which
created an overwhelmingly hostile and antagonistic atmosphere
in the hearing room and disrupted Plaintiff's hearing, intim-
idated him, and prevented him from being able to calmly,
logically, and intelligently communicate to DHE Nunez his
defense to the misconduct charge against him. DHE Nunez quickly
adopted C.O. Myers' attitude towards Plaintiff, refused to
hear Plaintiff out and allow him to present documentary evid-
ence or call the witnesses requested on the DC-141 Part 2(A)
form, and summarily found Plaintiff guilty of the misconduct
charged based soley on the information written by C.O. Yeager
in the inmate misconduct report, sanctioning Plaintiff with
30 days of cell restriction. DHE Nunez did not mitigate the
the misconduct charge from a Class I to a Class II offense
based on the legitimate purpose of the contraband, contrary
to DOC inmate misconduct procedures. (See <u>DC-ADM 801, Section
1, Attachment 1-A, Code 36</u>). In addition to being sanctioned
with cell restriction by DHE Nunez, Plaintiff was not permitted
to serve his cell restriction in his dorm area and dorm cubicle,
and was removed from the VSU, contrary to DOC inmate misconduct
procedures (see <u>DC-ADM 801, Sections 4.B.2, 4.c, and 5</u>), and
Plaintiff lost an inmate work assignment as a R.U.F.F. service

(5-11)

dog trainer, which he had already been approved for and included a monthly inmate wage of approximately $125.00-$150.00, as well as his eligibility and place on the waiting list for an inmate work assignment as a Certified Peer Specialist (CPS) and Correctional Industries (C.I.) Warehouse Worker, both of which work assignments included a monthly inmate wage of approximately $125.00-$150.00 and additional job-related benefits. Plaintiff did attempt to appeal the inmate misconduct hearing at issue, but was unsuccessful with that appeal.

Based on the Statement of Facts set forth in the aforegoing ¶¶ 1-14, supra, Plaintiff alleges that (1) the repeated searches of his cell and personal property for case-related documentation related to the criminal cases of other prisoners, the inmate misconduct report issued against him for his possession of such documentation, and the manner in which his inmate misconduct hearing was conducted by the Defendants identified herein constituted a pattern of vindictive harassment and retaliation by these Defendants that targeted Plaintiff for engaging in constitutionally-protected activities and violated Plaintiff's right of access to the courts and petition, right to be free from unreasonable searches and seizures, and right to due process of law under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution; and (2) Defendants Nunez and Myers denied Plaintiff a fair and impartial inmate misconduct hearing and the basic due process protections required at prison disciplinary hearings in violation of the Fourteenth Amendment Due Process Clause of the U.S. Constitution.

(5-12)

## PLAINTIFF'S INJURIES

Plaintiff complains of the following injuries: (1) the addition of an inmate misconduct report to Plaintiff's permanent institutional record; (2) Plaintiff's confinement to his cell for a period of 30 days, during which time Plaintiff was only permitted to come out of his cell for one hour each day to shower and use the inmate telephones or email kiosks, and Plaintiff was not permitted to communicate or interact with other prisoners at his cell door while on cell restriction; (3) Plaintiff's removal from the VSU and all access to the therapeutic programming, increased privileges and freedom of movement, and Plaintiff's brother veterans and friends on the VSU; (4) Plaintiff's placement in a substantially more restrictive and hostile cellblock environment; (5) the loss of Plaintiff's inmate work assignment as a R.U.F.F. service dog trainer and the monthly wages and therapeutic benefits that accompanied such work assignment; (6) the loss of Plaintiff's eligibility for inmate work assignments as a Certified Peer Specialist (CPS) and Correctional Industries (C.I.) Warehouse Worker and the monthly wages that accompanied such work assignments; and (7) the personal humiliation, psychological and emotional distress, and physical discomfort that Plaintiff suffered as a direct result of the Defendants actions and the aforegoing conditions.

## RELIEF REQUESTED BY PLAINTIFF

Plaintiff requests that the Court grant him the following relief in this cause of action:

Declaratory relief finding that (1) Plaintiff's temporary poss-

(5-13)

ession of the case-related documentation of the prisoners identified in ¶ 2, ante, for the purpose of attacking their respective state court judgements of conviction constituted constitutionally-protected activity; (2) the Defendants identified herein engaged in a pattern of vindictive harassment and retaliation against Plaintiff for engaging in constitutionally-protected activities that violated Plaintiff's rights under the U.S. Constitution; and (3) Defendants Nunez and Myers denied Plaintiff a fair and impartial misconduct hearing and the basic due process protections required at prison disciplinary hearings by the U.S. Constitution.

Injunctive relief enjoining the DOC to expunge the inmate misconduct charge at issue from Plaintiff's permanent institutional record and place Plaintiff back in the SCI Houtzdale VSU and R.U.F.F. service dog training program.

Compensatory damages in the amount of $1,000.00 dollars to be paid to Plaintiff by each of the Defendants for the acts of misconduct complained of herein, plus $100.00 dollars per day for each day of cell restriction Plaintiff served and $150.00 dollars per month from the date of Plaintiff's inmate misconduct report for the R.U.F.F. service dog training program wages lost by Plaintiff as a result of the inmate misconduct report and misconduct hearing sanctions issued against Plaintiff by the Defendants to this cause of action.

Punitive damages in an amount to be determined by a judge or jury.

All costs associated with the filing and litigation of this cause of action.

(5-14)

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

SCI Houtzdale

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

All claims.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

[X] Yes

[ ] No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

[ ] Yes

[ ] No

E.    If you did file a grievance:

1.    Where did you file the grievance?

SCI Houtzdale

2.    What did you claim in your grievance?

(See Grievance Documentation, appended hereto at EXHIBIT A)

3.    What was the result, if any?

All claims and requests for relief denied.

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*
Appealed both institutional grievance and misconduct report and hearing result to highest level of those institutional processes.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

    F.       If you did not file a grievance:

           1.    If there are any reasons why you did not file a grievance, state them here:

           2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

    G.       Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.     Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.     If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

     1.    Parties to the previous lawsuit

           Plaintiff(s) _____

           Defendant(s) _____

     2.    Court *(if federal court, name the district; if state court, name the county and State)*

         _____

     3.    Docket or index number

         _____

     4.    Name of Judge assigned to your case

         _____

     5.    Approximate date of filing lawsuit

         _____

     6.    Is the case still pending?

         ☐ Yes

         ☐ No

         If no, give the approximate date of disposition. _____

     7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

         _____

C.     Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

[X] Yes

[ ] No

D.      If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)    John Williams

Defendant(s)    Tom Wolf, et al.

2.   Court *(if federal court, name the district; if state court, name the county and State)*

Western District of Pennsylvania

3.   Docket or index number

No. 3:20-CV-0061

4.   Name of Judge assigned to your case

Magistrate Judge Kelly, District Judge Haines

5.   Approximate date of filing lawsuit

April 1, 2020

6.   Is the case still pending?

[ ] Yes

[X] No

If no, give the approximate date of disposition    March 8, 2023

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

Summary judgement entered in favor of certain Defendants, claims against other Defendants dismissed pursuant to Fed.R.Civ.P. 4(m).

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    September 15, 2023

Signature of Plaintiff

Printed Name of Plaintiff    John Williams

Prison Identification #    DOC #NW7468

Prison Address    SCI Phoenix, 1200 Mokychic Drive

Collegeville                    PA    19426
City                                State    Zip Code

### B.    For Attorneys

Date of signing:    _____

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

City                                State    Zip Code

Telephone Number

E-mail Address